GENERAL MOTORS CORP., APPELLANT, *v.* KOSYDAR, TAX COMMR., APPELLEE.

[Cite as General Motors Corp. v. Kosydar (1974), 37 Ohio St. 2d 138.]

(No. 73-473—Decided March 20, 1974.)

142

*Messrs. George, Greek, King, McMahon & McCon-naughey, Mr. Kiehner Johnson, Mr. Ross L. Malone, Mr. Paul H. Zalecki* and *Mr. Lawrence R. Sessoms,* for appellant.

*Mr. William J. Brown,* attorney general, and *Mrs. Maryann B. Gall,* for appellee.

CORRIGAN, J. Appellant does not dispute the Tax Commissioner's determination that appellant was the "consumer" of the assessed tooling, as defined in R. C. 5739.01 (D), but propounds three propositions of law, each of which, if accepted by this court, would except appellant from the sales and use taxes imposed.

## I.

Appellant's first proposition of law is that the exceptions to the statutory definition of "retail sale," provided by R. C. 5739.01(E), are predicated upon the purpose of the consumer that the item be used in an excepted manner. Appellant argues that the use of the tooling by an outside manufacturer directly in the manufacturing of component parts and subassemblies to be used in the production process of General Motors fulfills the requirement of R. C. 5739.01(E)(2) that the purpose of the consumer of the item transferred be "* * * to use or consume the thing transferred directly in the production of tangible personal

property for sale by manufacturing, processing * * *.''
Appellant argues that the decision of the Board of Tax
Appeals reads into the statute a limitation that the purpose
of the consumer must be that the consumer, *himself,* use
or consume the thing transferred directly by manufactur-
ing personal property. Appellant contends that this was
not the intention of the General Assembly and that the
court decisions do not require that the transactions invol-
ved be subject to taxation. We disagree.

A review of the decisions interpreting R. C. 5739.01
(E)(2) clearly establish that in order to qualify for an ex-
ception to the statutory definition of ''retail sale'' the
property transferred must be used or consumed directly by
the user or consumer. *Apex Powder Corp.* v. *Peck* (1954),
162 Ohio St. 189; *Zinc Engravers* v. *Bowers* (1958), 168
Ohio St. 43; *State, ex rel. Stutler,* v. *Yacobucci* (1959), 169
Ohio St. 20; *Victory Express* v. *Bowers* (1959), 169 Ohio
St. 227; *H. J. Heinz Co.* v. *Bowers* (1960), 170 Ohio St.
423; *Coca Cola Bottling Co.* v. *Bowers* (1960), 171 Ohio
St. 26.

Judge Thomas J. Herbert, in *Zinc Engravers*, directed
his attention to a proposition similar to that of appellant
in the present case. In *Zinc Engravers*, the A. Polsky Com-
pany, a department store, purchased mats and engravings
from Zinc Engravers and paid a sales tax on the pur-
chases. Subsequently, the mats and engravings were trans-
ferred without consideration to the Akron Beacon Journal
for use in printing Polsky's advertising material in the
newspaper, at certain fixed rates. Title to the mats and
engravings was at all times in Polsky, and, after use by
the newspaper, the mats and engravings were returned to
Polsky. Polsky delivered to and filed with Zinc Engravers
a purported blanket certificate of exemption, which the
Tax Commissioner disallowed.

As one of the grounds for its appeal, Zinc Engravers
maintained that the ''direct use'' exception from the de-
finition of ''retail sale,'' pursuant to R. C. 5739.01(E) (2),
was applicable. The appellant contended that this court's
decision in *Apex Powder Corp., supra* (162 Ohio St. 189),

excepted the sales of the mats and engravings because
" 'the purpose of the consumer was *to purchase* the said
engravings, etchings and mats *for use* directly in the pro-
duction of tangible personal property for sale by manu-
facturing or processing.' "

The court held that the mats and engravings were not
used or consumed directly in the production of tangible
personal property. It stated that the appellant had estab-
lished only that its purpose was that the items "transfer-
red *be used or consumed* directly in such production of
tangible personal property." It was admitted that the use
or consumption of the transferred property was by some
one other than the consumer, and, in view of the clear lang-
uage of R. C. 5739.01, the court declined to extend the
*Apex* ruling, stating, at page 52:

"We do not believe that the Legislature intended the
exception under this category [direct use in manufactur-
ing of tangible personal property] to be extended beyond
the use or consumption by the consumer himself."

Appellant also cites *Apex Powder Corp v. Peck, supra*
(162 Ohio St. 189), *State, ex rel. Stutler, v. Yacobucci,
supra* (169 Ohio St. 20), *H. J. Heinz Co. v. Bowers, supra*
(170 Ohio St. 423), *Coca Cola Bottling Co. v. Bowers, supra*
(171 Ohio St. 26), and *House of Seagram v. Bowers* (1964),
175 Ohio St. 465, for the proposition that the exception
contained in R. C. 5739.01(E) (2) is wholly dependent up-
on the use of, and the purpose to use, the transferred prop-
erty and not the status of the user. However, a review of
the cited cases clearly shows that none involved a use or
consumption of transferred property *by some one other
than the consumer.*

The *Apex* case, in fact, involved a sales and use tax
assessment on drilling and blasting equipment purchased
and used by the appellant in performing mining operations
for others. The Tax Commissioner sought to tax the pur-
chases upon the basis that the consumer did not own, nor
could he sell, the tangible personal property produced by
mining. The court held that the statutory language requir-

ing a consumer to have a "purpose * * * to use * * * [a] thing transferred directly in the production of tangible personal property for sale by * * * mining" contained no requirement that the sale be made by the consumer.

Conversely, in the present case, R. C. 5739.01(E)(2) mandates that the consumer "* * * use or consume the thing transferred *directly* in the production of tangible personal property for sale by manufacturing * * *." (Emphasis added.) In this context, and in light of prior decisions of this court, the word "directly" can only be interpreted as requiring a direct use or consumption by the consumer of the transferred property.

Accordingly, the decision of the Board of Tax Appeals that appellant was not entitled to a tax exception under R. C. 5739.01(E)(2) is reasonable and lawful.

## II.

Appellant's second proposition of law is that the transactions between General Motors and its outside suppliers, as a part of the contract for the production of parts, subassemblies and components with a specific quality at stated unit prices and upon specific delivery schedules, in which the title to tooling passed to General Motors, and the outside supplier retained possession of the tooling for exclusive use in manufacturing such parts for General Motors, constitute purchases for *resale* which are excepted from sales and use taxes by R. C. 5739.01(E)(1) and 5741.02(C)(2).

With that proposition, we agree.

R. C. 5739.01(E) excepts from the definition of "retail sale" and "sale at retail" those sales in which the purpose of the consumer is:

"(1) To resell the thing transferred in the form in which the same is, or is to be, received by him."

R. C. 5739.01(B) defines "sale" and "selling," as follows:

" 'Sale' and 'selling' include all transactions by which title or possession, or both, of tangible personal property, is or is to be transferred, or a license to use or consume

tangible personal property is or is to be granted \* \* \* for a consideration in any manner, whether absolutely or conditionally, whether for a price or a rental, in money or by exchange, and by any means whatsoever; and include the production or fabrication of tangible personal property for a consideration for consumers who furnish either directly or indirectly the materials used in the production of fabrication work \* \* \*."

R. C. 5741.02(C)(2), a use tax statute, incorporates by reference the sales tax exceptions of R. C. Chapter 5739.01.

Both the Tax Commissioner and the Board of Tax Appeals, in considering this proposition, determined that the outside suppliers did not receive possession of the tooling by virtue of a sale, since the property transferred by the consumer (General Motors) was not acquired by the outside suppliers for a consideration.

The Board of Tax Appeals correctly cited *Barth Corp.* v. *Schneider* (1966), 6 Ohio St. 2d 108, and *Kloepfer's* v. *Peck* (1953), 158 Ohio St. 577, for the proposition that in order for a transfer of possession of property to constitute a sale within the meaning of the Sales Tax Act the transfer must be for a consideration. R. C. 5739.01(B) clearly states a broad definition of "consideration," as follows:

"\* \* \* for a consideration in any manner, whether absolutely or conditionally, whether for a price or rental, in money or by exchange, and by any means whatsoever \* \* \*."

The contractual agreements between General Motors and its outside suppliers constitute bilateral "requirements" contracts. The agreement calls for a mutual exchange of promises between General Motors and its suppliers. General Motors covenants to the suppliers to grant an exclusive license to use General Motors' tooling and a promise to pay the suppliers for all General Motors' requirements of the tooling which the suppliers produce. In return, the suppliers promise to produce all the parts General Motors requires according to the time, quality and

quantity specifications General Motors establishes, and to produce those parts exclusively for General Motors. Where the terms of such a contract are specific, the agreement to buy or sell what will be "needed" or "required" has been enforced by the courts with little difficulty, and has been held to be based upon consideration. 1 Williston on Contracts (3 Ed.), 402, Consideration, Section 104A; *Laveson* v. *Warner Mfg. Corp.* (D. C. N. J., 1953), 117 F. Supp. 124; *Oregon Plywood Sales Corp.* v. *Sutherlin Plywood Corp.* (C. A. 9, 1957), 246 F. 2d 466; *Foley Lumber Industries* v. *Buckeye Cellulose Corp.* (C. A. 5, 1961), 286 F. 2d 697. See, also, R. C. 1302.19 (UCC 2-306), recognizing requirements contracts. In *Fuchs* v. *United Motor Stage Co.* (1939), 135 Ohio St. 509, this court recognized the business necessity for, and the legality of, requirements contracts, stating that the mutual promises of the buyer to buy and the seller to sell the requirements of a commodity are consideration one for the other. Likewise, it has been stated another way—that the promise of a seller not to manufacture except for the buyer, or the promise of the buyer not to buy except from a particular seller, is clearly a promise to do something detrimental. Williston, *supra*, page 406.

In the present case, it is clear that the transfer of possession of the tooling by General Motors to its suppliers was not gratuitous. The suppliers were bound to supply all of General Motors' requirements for the goods, subject to General Motors' time and quality control standards and the threat of removal of the tooling if such standards were not met. We hold, therefore, that the suppliers' agreement constituted adequate consideration for a "sale" of the tooling within the meaning of R. C. 5739.01(B), and such tooling is, therefore, excepted from the imposition of the Ohio sales and use taxes by virtue of the exceptions contained in R. C. 5739.01(E)(1) and 5741.02(C)(2).

Upon the basis of such exceptions, the decision of the Board of Tax Appeals, insofar as it refused to grant a tax exception under R. C. 5739.01(E)(1), is unreasonable and unlawful.

## III.

Appellant's third proposition of law is that the provisions of R. C. 5701.03 specifically except patterns, jigs and dies from the definition of personal property and, therefore, such items are not personal property subject to the definition of "sale" contained in R. C. 5739.01(B) nor subject to the levy of sales taxes pursuant to R. C. 5739.02.

R. C. 5701.03 excepts from the definition of "personal property" patterns, jigs, dies, or drawings which are held . for use and not for sale in the ordinary course of business. As was pointed out by this court in *Celina Mutual Ins. Co.* v. *Bowers* (1965), 5 Ohio St. 2d 12, and *Howell Air* v. *Porterfield* (1970), 22 Ohio St. 2d 32, the Ohio sales and use taxes are not taxes on property, but are excise taxes on the exercise of the privileges incident to ownership. The tax is levied on transactions with respect to the property. In the instant case, the property was purchased by appellant and resold to appellant's suppliers; it was not held for use. The jigs and dies are not, therefore, entitled to exception from the definition of personal property under R. C. 5701.03, and the decision of the Board of Tax Appeals denying such exception is reasonable and lawful.

For the reasons expressed in Part II of this opinion the decision of the Board of Tax Appeals is unreasonable and unlawful and is, therefore, reversed.

*Decision reversed.*

O'NEILL, C. J., HERBERT, STERN, CELEBREZZE and W. BROWN, JJ., concur.

PAUL W. BROWN, J., concurring. I concur in the judgment of reversal, but for reasons other than those stated in the majority opinion.

Under the circumstances of this case, the sale in question is within the exception contained in R. C. 5739.01(E) in that "the purpose of the consumer is * * * to use or consume the thing transferred directly in the production of tangible personal property for sale by manufacturing."

Under R. C. 5739.01(E), the purpose of the consumer is controlling, and I find no language in the statute that requires the Tax Commissioner, or the Board of Tax Appeals, to look beyond the purpose of the consumer.

An excepted purpose must exist at the time of the sale in order to make it an excepted sale. The character and identity of the user is immaterial as long as no other sale occurs, and may not become apparent until the performance of the manufacturing process for which the tooling is designed is commenced. When the manufacturing process has commenced, it is immaterial, for the purpose of the exception, whether General Motors employs an individual on the payroll of one of its divisions to use the tool or employs an independent outside corporation for the same purpose. Only one sale has occurred, and whether the sale is within the exception of the statute is determined by the consumer's purpose at the time the sale—not by the nature of a contractual arrangement between the consumer and the agent using the tool, whether corporate or individual.*

Since the use of the tooling by the supplier was for and on behalf of General Motors, and as its corporate agent, I conclude that there was no sale by General Motors, and that both the holding and the use of the patterns, jigs, dies, or drawings were such that R. C. 5701.03 applies so as to exept those items from the statutory definition of personal property. I would reverse the decision of the Board of Tax Appeals in its entirety.

*Zinc Engravers v. Bowers (1958), 168 Ohio St. 43, supports appellant's position rather than that of the appellee, for there the court held that the consumer did have the *purpose* of retailing when it purchased the engravings, and allowed an exception from taxation upon the basis that they were used directly in making retail sales in spite of the fact that the use was actually by a third party. There was only *one* sale and the undeniable purpose of the consumer at the time of the sale was to use the property directly in making retail sales.

*Apex Powder Corp.* v. *Peck* (1954), 162 Ohio St. 189, 191; supports this holding and contains the following:

"* * * The statutory words only require that such consumer must have a 'purpose * * * to use * * * the thing transferred directly in the production of tangible personal property for sale.' "