COCA-COLA BOTTLING CORP., APPELLANT, *v.* KOSYDAR, TAX COMMR., APPELLEE.

(No. 74-1039—Decided July 16, 1975.)

*Messrs. Taft, Stettinius & Hollister* and *Mr. Jerold A. Fink*, for appellant.

*Mr. William J. Brown*, attorney general, and *Mr. John C. Duffy, Jr.*, for appellee.

CORRIGAN, J. The assessment on the purchases in issue will be treated as a sales tax assessment, since R. C. 5741.02 (C)(2) incorporates the sales tax exceptions into the Ohio use tax levied in R. C. 5741.02.

The record indicates that the premix dispensing equipment consisted of carbon dioxide cylinders, 608-ounce beverage tanks, tubing, dispensing heads, and cold plates. All the items are found at dispensing stations in drug stores, soda fountains and other locations where premix Coca-Cola and related products are sold. All the equipment in issue is purchased by the appellant corporation.

The items are installed at the customer's dispensing location by appellant's service staff. Each customer-retailer must use an average of four tanks of premix beverage per week. This requirement, however, is not contained in a written contract nor is it manifest in any written form. There is no charge for the use of premix equipment installed in a customer's dispensing locations. A customer who buys 100 cylinders of premix beverage per week pays the same price per cylinder as a customer who buys ten cylinders per week. Appellant reserves the right to remove equipment if a customer-retailer fails to average four cylinders per week or if the customer-retailer uses the equipment for any purpose other than dispensing appellant's products.

The "special events" equipment consists of concession stands, trailers, coolers, and other dispensing items. The appellant "loans" the equipment to customers, and makes no charge for the use and possession thereof. Appellant makes periodic checks of the equipment to ensure it is used exclusively to dispense appellant's products.

The beverage coolers are also "loaned" to customers for use at special events, fairs, socials, and similar events. The coolers are to be used exclusively by appellant's customers for dispensing appellant's products and are checked by appellant to ensure exclusive use.

The record indicates that customers of appellant are not prohibited from dispensing other products but only from dispensing other products through the use of appellant's equipment.

Appellant maintains that this equipment is excepted from the definition of a "retail sale" contained in R. C. 5739.01 because appellant's purpose in purchasing the equipment is to: (1) Use or consume the transferred equipment directly in making retail sales, pursuant to R. C. 5739.01(E) (2); and (2) resell the equipment transferred in the same form that it is received by appellant, pursuant to R. C. 5739.01(E) (1).

## I.

Appellant's first contention is without merit. Numerous decisions of this court have established that in order

for a consumer to have a purpose that transferred equipment be used or consumed directly in making retail sales the consumer of the transferred goods must, himself, make retail sales. *H. J. Heinz Co.* v. *Bowers* (1960), 170 Ohio St. 423; *Coca Cola Bottling Co. of Youngstown* v. *Bowers* (1960), 171 Ohio St. 26; *San-A-Pure Dairy Co.* v. *Bowers* (1962), 173 Ohio St. 469.

The *San-A-Pure Dairy* case is factually similar to the case at bar. The consumer of the assessed refrigerated cabinets in that case was a manufacturer and wholesaler of ice cream. The consumer retained ownership of the purchased cases but furnished them to retailers of his product for the display and sale of the same without making a direct charge for such use or increasing the cost of the ice cream to such retailers above the prevailing wholesale price. In denying the appellant's contention that it was entitled to an exception from sales and use taxes because it had the purpose "to use or consume the thing transferred directly in making retail sales," the court stated, at page 472:

"* * * although the refrigerated cases or cabinets in issue were ultimately used in connection with making retail sales, it was the retailer and not the appellant who used them for that purpose, and the appellant, a separate entity, may not place itself in the retailer's shoes."

In the present case, the appellant-consumer manufactures and wholesales soft drink products. Although appellant may have the purpose that the dispensing equipment in issue be used or consumed in making retail sales, appellant does not directly use or consume it in making retail sales. Appellant is a wholesale distributor. Only those retailers who make use of appellant's dispensing equipment in making retail sales use that equipment directly in the manner contemplated by R. C. 5739.01(E)(2). Appellant makes no retail sales and cannot stand in their shoes.

## II.

Appellant's second contention is that purchases of dispensing equipment are excepted from Ohio sales and use taxes, pursuant to R. C. 5739.01(E)(1), where a soft drink bottler purchases soft drink dispensing equipment with the

purpose of loaning such equipment to customers under agreements which require those customers to use that equipment to dispense exclusively the soft drink products sold to them by the bottler and, in some instances, require those customers to maintain certain specified levels of sales in order to retain the use of that equipment, and such transactions constitute resales of the dispensing equipment to those customers, supported by a consideration paid by those customers, consisting of promises amounting to the level of legal detriments, in exchange for the rent-free use of the equipment.

The Tax Commissioner and the Board of Tax Appeals, in denying the appellant an exception under R. C. 5739.01 (E)(1) and assessing the equipment in issue, relied on the decision of this court in *San-A-Pure Dairy Co.* v. *Bowers, supra* (173 Ohio St. 469). The *San-A-Pure Dairy* decision is factually similar to the present case and, we think, controlling.

In the present case, it is undisputed that Coca-Cola retained ownership of the dispensing equipment in question while transferring said equipment to customer-retailers. The only issue requiring resolution is whether the transferred equipment was acquired by appellant's customer-retailers for a consideration, thus constituting a resale of the equipment under R. C. 5739.01(E)(1).

R. C. 5739.01(B) defines "sale" and "selling" to include "* * * all transactions by which title or possession, or both, of tangible personal property, is or is to be transferred, or a license to use or consume tangible personal property is or is to be granted * * * for a consideration in any manner, whether absolutely or conditionally, whether for a price or rental, in money or by exchange, and by any means whatsoever * * *."

The record indicates that appellant made no direct charge for the premix dispensing equipment but, rather, billed customer-retailers for the amount of premix beverage which they purchased. The price per cylinder of premix

beverage was the same for all of appellant's customer-retailers. Appellant also had available to customers a post-mix beverage requiring none of the premix dispensing equipment. The postmix beverage is dispensed through dispensing heads or taps, along with other products. Apparently, these "regular" heads are purchased or rented from a manufacturer. Postmix beverage, appellant's witness testified, is considerably cheaper than premix beverage. Appellant maintains that the increased price of premix beverage reflects the cost of the dispensing equipment. Premix beverage differs from postmix beverage in that it, as the name implies, is mixed prior to dispensing and is the same as a bottled product, whereas postmix, apparently, is supplied in the form of a syrup which is carbonated at the dispensing head. Premix cannot be dispensed through the dispensing equipment used for postmix beverage. Premix beverage is essentially a separate product and its higher price cannot be considered as a charge for the special equipment necessary to dispense it.

In *San-A-Pure Dairy*, this court held that the mere agreement to maintain the exclusive use of transferred refrigerated cases for storage and display of appellant's products did not constitute consideration for the transfer sufficient to constitute a sale where there was no direct charge for the use of the cabinets or increase in the cost of the product sold above prevailing wholesale prices. The court held further that a rebate given in independent transactions to other retailers who use their own cases for storage and display did not operate to show a sale of refrigerated cases in the transfers in issue. Clearly, the only detriment undertaken by the retailers accepting cases from San-A-Pure Dairy was in maintaining the cases for the exclusive use of appellant's products.

Likewise, in the present case, retailers using appellant's dispensing equipment, special events equipment, and beverage coolers were required to use that equipment exclusively to dispense appellant's products.

In the case of the dispensing equipment, the connector fittings for the tanks, lines and dispensing heads were

192

such that no competitor's beverage tanks would fit appellant's dispensing equipment without alteration. Additionally, it is not apparent from the record that customer-retailers of appellant were required to forebear from selling a competitor's product in their places of business provided they did not dispense such product from appellant's equipment.

Similarly, in the case of the special events equipment, appellant's customer-retailers were prohibited from dispensing or selling other products from appellant's concession stands and trailers. The customer-retailer was not, however, prohibited from retailing other products in adjacent booths.

This is substantially the same situation which occurred in the *San-A-Pure Dairy* case, where the retailers were prohibited from displaying and storing products other than appellant's in the cases furnished by appellant but were free to store and display other products in other cases located in their places of business.

The arrangement between the appellant and its customer-retailers in the present case was not an exclusive dealing agreement contemplating the sale of no other products than appellant's, although appellant's witnesses stated that the practical effect of the agreement was to increase the sales volume of appellant's products in relation to other products and, in the case of the "special events" equipment, to acquire 90% of the soft drink business at special events.

Appellant maintains that the requirement that customer-retailers maintain an average volume of four cylinders of beverage per week in order to retain possession of the dispensing equipment constitutes a legal detriment to customers amounting to consideration for the rent-free use of the equipment. Similarly, appellant maintains that the exclusive use requirement also constitutes a legal detriment affording consideration for the use of the dispensing equipment. Appellant relies on this court's decision in *Gen-*

eral *Motors Corp.* v. *Kosydar* (1974), 37 Ohio St. 2d 138. This reliance is misplaced.

The *General Motors* decision is clearly distinguishable from the case at bar. In the *General Motors* case, the "customer" of General Motors, the outside supplier, agreed, in a mutually bargained-for exchange, to supply all of General Motors' requirements of certain automotive parts, according to the time, quality and quantity specifications which General Motors established and in return General Motors agreed to grant an exclusive license to use General Motors' tooling to the suppliers and to pay the suppliers for all General Motors' requirements of the tooling which the supplier produced. The supplier, in that case, has committed itself to manufacture General Motors' requirements of parts. It is this anticipated performance which supplies consideration for the license to use General Motors' tooling.

The uttering of promises does not supply the actual consideration for the bargain. It is the content of the promise or the actual anticipated performance which supplies consideration for the bargain. 1 Williston on Contracts (3 Ed.), Section 103.

In the present case, there is neither mutuality of assent to the agreement between appellant and its customers nor legal detriment arising out of the agreement. The record indicates that, before appellant ever agrees to install premix dispensing equipment with a customer, a study is made with the customer to determine the customer's present sales volume of appellant's product, whether it be bottled or postmix, in order to ascertain whether the customer can meet appellant's average volume requirement. Appellant's volume requirement is a prerequisite to any agreement to install dispensing equipment rather than consideration bargained for in return for such installation.

Similarly, the customer's agreement is illusory. If the customer fails to maintain the required volume, he suffers no legal detriment. Appellant cannot sue a customer

for damages for failure to maintain the average volume requirement nor is the customer barred from purchasing appellant's bottled and postmix beverages. The agreement is not an output or requirements contract.

Likewise, appellant's exclusive use requirement is a condition precedent to the installation of dispensing equipment and the use of special events equipment and beverage coolers. The promise to use appellant's "loaned" equipment exclusively to dispense appellant's product is not only not freely bargained for but is also illusory in regard to the premix dispensing equipment. The premix dispensing equipment is designed so that the fittings will only accept appellant's beverage cylinders. What appellant's customers' covenant is, in effect, to do what they are legally obligated to do—to not alter appellant's equipment.

Additionally, there is no legal detriment to appellant's customers arising out of the agreement. The customers are not prohibited from selling other products, only from using appellant's equipment to do so.

We hold, therefore, that the transfers to retailers of the items assessed by the Tax Commissioner were gratuitous, conditional and unsupported by any form of consideration.

The decision of the Board of Tax Appeals is, therefore, affirmed.

*Decision affirmed.*

O'NEILL, C. J., HERBERT, STERN, CELEBREZZE and W. BROWN, JJ., concur.

P. BROWN, J., dissents.