PROCTER & GAMBLE COMPANY, APPELLANT, *v.* LINDLEY,
TAX COMMR., APPELLEE.

[Cite as Procter & Gamble Co. *v.* Lindley (1985), 17 Ohio St. 3d 71.]

(No. 84-850—Decided May 15, 1985.)

72

*Taliaferro, Smith, Mann, Wolnitzek & Schachter, David S. Mann, Dinsmore & Shohl* and *William D. Howe,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Mark A. Engel,* for appellee.

WRIGHT, J. The sole issue presented in this appeal is whether appellant's purchase of artwork from outside artists, which artwork is subsequently transferred to appellant's packaging or advertising materials suppliers, is exempt from sales and use taxes pursuant to R.C. 5739.01(E)(1) and 5741.02(C)(2). Appellant claims these exemptions on the basis that it "resells" the artwork to its suppliers. For the reasons that follow, this

court holds that the exemptions set forth in R.C. 5739.01(E)(1) and 5741.02(C)(2) are applicable herein and sales and use taxes were improperly levied on the purchase of this artwork by appellant from outside artists for the calendar years 1974 through 1976.

R.C. 5739.02 imposes an excise tax on each retail sale made in Ohio, with R.C. 5741.02 imposing a complementary excise tax on the use of tangible personal property in Ohio. Pursuant to R.C. 5741.02(C)(2), however, such use tax will not apply where the acquisition of the property is exempt from sales tax. As such, this court need only focus on the relevant sales tax provisions.

Certain items purchased are exempted from sales taxation by virtue of R.C. 5739.01(E)(1), which provides in pertinent part as follows:

" 'Retail sale' and 'sales at retail' include all sales except those in which the purpose of the consumer is:

"(1) To resell the thing in the form in which the same is, or is to be, received by him; * * *"

In the instant case, there is no dispute that the artwork received by appellant is transferred in the form in which it was received. The critical inquiry is whether this transfer constituted a "sale" within the meaning of the Sales Tax Act.

R.C. 5739.01(B) defines " '[s]ale' and 'selling' [to] include all transactions by which title or possession, or both, of tangible personal property, is or is to be transferred, or a license to use or consume tangible personal property is or is to be granted * * * *for a consideration* * * *." (Emphasis added.)

This court, in *Kloepfer's, Inc.* v. *Peck* (1953), 158 Ohio St. 577, 578 [49 O.O. 483], held that "* * * the mere transfer of possession of property is not, within the meaning of the * * * statutory definition, a sale unless it is a transfer 'for a consideration.' "[1] R.C. 5739.01(B) provides the following broad definition of "consideration": "* * * for a consideration in any manner, whether absolutely or conditionally, whether for a price or rental, in money or by exchange, and by any means whatsoever. * * *"

Case law is in accord, for "consideration" as used in R.C. 5739.01(B) has not been limited solely to monetary consideration. In light of this factor, we believe that our decision in *General Motors Corp.* v. *Kosydar* (1974), 37 Ohio St. 2d 138 [66 O.O.2d 304], is dispositive of the present appeal.

In *General Motors,* we held that the transfer of tooling from General Motors to its suppliers for their exclusive use in the production of automotive parts was supported by consideration and thus constituted a "resale" pursuant to R.C. 5739.01(E)(1). Appellant has carefully delineated the many similarities between *General Motors* and the case at

---

[1] This court was construing the predecessor to R.C. 5739.01(B), G.C. 5546-1.

bar.[2] These similarities are obvious and compelling, and serve to establish, in each case, sufficient legal detriment necessary to a finding of consideration. In each case, the suppliers must satisfy rigorous qualifying standards. The procedures for the granting of a contract are also comparable in both cases. The suppliers must further agree to meet requirements concerning confidentiality, exclusive use, time, quality, and quantity. In each case, the supplier had possession of, but not title to, the item transferred

---

[2] The following is a complete list of factors, as noted by appellant, which are common to both *General Motors, supra,* and the case at bar and which evidence the element of consideration:

1. A series of transactions with outside suppliers.
2. As a part of a contract for the production of items.
3. A specific quality.
4. Stated unit prices.
5. Specific delivery schedules.
6. Title to the product (*i.e.,* tooling or artwork) in the manufacturer (*i.e.,* General Motors or Procter & Gamble).
7. Possession of the product remains in the outside suppliers.
8. Such possession is for the suppliers' exclusive use in the production of the item.
9. Mutual exchange of detrimental promises.
10. The manufacturer identifies the need for a particular product.
11. Continuing evaluation and qualification of outside suppliers upon the basis of their facilities, equipment, processing capabilities and quality control habits.
12. Maintenance of a list of outside suppliers which are capable of performing up to the requisite quality and production standards.
13. Annual determination of volume requirements of a particular item for a particular annual production year.
14. Preparation of competitive inquiry that is sent to outside suppliers.
15. Suppliers respond to the inquiry.
16. Examination of supplier responses and determination as to the best economic package on each particular item needed.
17. Manufacturer takes title to the product for two reasons:
A. The product is proprietary in nature.
B. Ownership by the manufacturer allows it to remove the product in the case of a strike, work stoppage or other inability to meet production schedules.
18. Award to an outside supplier is conditioned upon maintenance of standards for quality and production.
19. Continuing surveillance and monitoring of a supplier's production.
20. Right to remove the product if there are problems in meeting maintenance standards.
21. Contracts between the manufacturer and its suppliers constitute bilateral requirements contracts.
22. Mutual exchange of promises:
A. The manufacturer agrees to grant an exclusive license for use of the product and promises to pay for all of its requirements for a particular item.
B. The suppliers promise to produce all of the items the manufacturer needs and to maintain the time, quality and quantity specifications of the manufacturer and to produce these products exclusively for the manufacturer.
23. The transfer of possession of the product was not gratuitous as the suppliers were bound to supply all of the manufacturer's requirements and to meet the manufacturer's time and quality control standards.

and was required to surrender possession of the item under specified circumstances, such as default, strike, work stoppage, insolvency or inability to perform. The only noteworthy distinction between the two cases makes appellant's position even stronger. In the case at bar, appellant physically transferred the artwork to its suppliers while the suppliers in *General Motors* simply retained possession of the tooling.

Furthermore, we note the existence of a bilateral requirements contract in both cases. In assessing this issue in *General Motors* we stated:

"The contractual agreements between General Motors and its outside suppliers constitute bilateral 'requirements' contracts. The agreement calls for a mutual exchange of promises between General Motors and its suppliers. General Motors covenants to the suppliers to grant an exclusive license to use General Motors' tooling and a promise to pay the suppliers for all General Motors' requirements of the tooling which the suppliers produce. In return, the suppliers promise to produce all the parts General Motors requires * * *." *Id.* at 146.

We also recognized that "* * * the business necessity for, and the legality of, requirements contracts, stating that the mutual promises of the buyer to buy and the seller to sell the requirements of a commodity are consideration one for the other. Likewise, it has been stated another way — that the promise of a seller not to manufacture except for the buyer, or the promise of the buyer not to buy except from a particular seller, is clearly a promise to do something detrimental." *Id.* at 147.

Here, as in *General Motors,* the appellant has effectively granted to each supplier an exclusive license to use the particular artwork specified in the contract between them and has promised to pay the supplier for all of its requirements of the contracted-for packaging materials upon which the artwork is affixed. In return, the supplier has promised to use the artwork exclusively for the appellant and to produce all of the appellant's requirements of the particular finished packaging materials. With respect to the artwork and packaging materials specified in each individual requirements contract, the supplier has agreed not to manufacture the contracted-for product except for the appellant, and the appellant, in nearly every instance, has agreed not to purchase that particular finished product from any other supplier.[3] This clearly is a promise to do something detrimental, and, thus, is sufficient consideration to satisfy the requirements of R.C. 5739.01(B).

The appellee has submitted two cases, *Coca-Cola Bottling Corp.* v. *Kosydar* (1975), 43 Ohio St. 2d 186 [72 O.O.2d 104], and *General Mills Fun*

---

[3] In a small number of cases, appellant purchased its requirements of the same finished packaging materials from more than one supplier. This does not necessarily destroy the requirements nature of each contract because the supplier, individually, may have been able to fulfill appellant's total requirements for only one of its many plant locations, although producing and providing the materials to appellant at a capacity rate. In effect, each supplier of the same product may have been operating under a requirements contract with appellant.

*Group, Inc.* v. *Lindley* (1982), 1 Ohio St. 3d 27, in support of its position that consideration is lacking under R.C. 5739.01(B) and that the resale exception of R.C. 5739.01(E)(1), therefore, is unavailable. These cases are distinguishable.

In *Coca-Cola* we held there was no consideration for the taxpayer's transfer of equipment to its customers for their use in dispensing beverages when there was no direct charge for the use of the equipment. Unlike the present case, *Coca-Cola* involves neither a requirements contract nor an exclusive dealing arrangement. Thus, the finding of no consideration was based upon factors entirely different from those existing in the situation at hand. Furthermore, the loaned equipment in *Coca-Cola* (soft-drink dispensing equipment, beverage coolers, concession stands) was simply a promotional "aid"; unlike the artwork, it was not essential to the supplier's conformity with contractual performance provisions. In fact, *Coca-Cola's* distinction of *General Motors* provides for the resolution of the issues presented herein:

"The *General Motors* decision is clearly distinguishable from the case at bar. In the *General Motors* case, the 'customer' of General Motors, the outside supplier, agreed, in a mutually bargained-for exchange, to supply all of General Motors' requirements of certain automotive parts, according to the time, quality and quantity specifications which General Motors established and in return General Motors agreed to grant an exclusive license to use General Motors' tooling to the suppliers and to pay the suppliers for all General Motors' requirements of the tooling which the supplier produced. The supplier, in that case, has committed itself to manufacture General Motors' requirements of parts. It is this anticipated performance which supplies consideration for the license to use General Motors' tooling." *Coca-Cola, supra,* at 193. This quoted segment reaffirms the applicability of *General Motors* to the present case.

*General Mills Fun Group, supra,* though similar in that it involves the transfer of artwork to suppliers for packaging purposes, is also distinguishable. The agreements in *General Mills Fun Group* do not fall within the scope of a bilateral requirements contract nor is there mention of specified quantity or quality standards. In that case, it does not appear that the suppliers were subject to any legal detriment whatsoever.

Based on the foregoing, it is clear that our decision in *General Motors, supra,* is controlling. Under the standard set forth in *General Motors,* there is sufficient legal detriment to constitute adequate consideration in the case at bar. Thus, we hold that when a taxpayer purchases artwork which it transfers, pursuant to bilateral requirements contracts, to outside suppliers for their use in preparing materials for the taxpayer, and the suppliers must satisfy rigorous qualifying standards and must further agree to meet requirements concerning confidentiality, exclusive use, time, quality and quantity, and to surrender possession of the artwork upon default, work stoppage, insolvency, or inability to perform, there is

sufficient legal detriment suffered by the outside suppliers in connection with the use of the artwork to constitute the consideration necessary for a "sale" pursuant to R.C. 5739.01(B), which therefore excepts the transfer from Ohio sales and use taxes by virtue of the "resale" provision of R.C. 5739.01(E)(1).

To hold otherwise could only serve to punish appellant's careful reliance on established precedent. In light of our holding today, and in the interests of fairness and justice, we find that the decision of the Board of Tax Appeals was unreasonable and unlawful. That decision, therefore, is reversed.

*Decision reversed.*

CELEBREZZE, C.J., SWEENEY, HOLMES and C. BROWN, JJ., concur.

LOCHER and DOUGLAS, JJ., dissent.

DOUGLAS, J., dissenting. In my opinion, the Board of Tax Appeals acted neither unreasonably nor unlawfully in finding that the transfer of artwork was not supported by consideration and resultantly did not constitute a "resale" as that term is used in R.C. 5739.01(E)(1). I believe the Tax Commissioner properly levied a sales and use assessment on the artwork purchased by appellant, and, thus, I dissent.

The majority finds, in part, that the transfers of artwork by appellant to its outside suppliers were accompanied by adequate consideration because the transfers were made pursuant to bilateral requirements contracts. Even if I were to agree that sufficient legal detriments arise out of a requirements contract so as to constitute adequate consideration, I would nevertheless be unable to join the majority. The facts of this case simply do not support the existence of a requirements contract.

This court, in *Fuchs* v. *United Motor Stage Co.* (1939), 135 Ohio St. 509, paragraph two of the syllabus, defined a requirements contract as follows:

"A contract in writing whereby one agrees to buy, for sufficient consideration, *all the merchandise of a designated type* which the buyer may require for use in his own established business * * *." (Emphasis added.)

The facts of this case clearly demonstrate that appellant made no promises to buy all of a needed named commodity from one supplier. The majority acknowledges this lack of exclusivity in footnote three, when it states as follows: "In a small number of cases, appellant purchased its requirements of the same finished packaging materials from more than one supplier."

The majority, without citing any authority, then states: "This does not necessarily destroy the requirements nature of each contract because the supplier, individually, may have been able to fulfill appellant's total re-

quirements for only one of its many plant locations, although producing and providing the materials to appellant at a capacity rate. * * *"4

I disagree. Without the element of exclusivity, there is simply no legal detriment suffered and there is thus no consideration. Professors Calamari and Perillo so recognized when they stated that "[a] promise by which one party agrees to purchase all his requirements of a given product from the other is supported by consideration. If no other detriment can be located, it will be found in the promisor's surrender of his privilege of purchasing elsewhere." (Emphasis added.) Calamari & Perillo, Law of Contracts (2 Ed. 1977) 166, Section 4-19. Professor Corbin's analysis is similar. "A promise to buy of another person or company all of some commodity or service that the promisor may thereafter need or require in his business is not an illusory promise; * * *. The promise contains one very definite element that specifically limits the promisor's future liberty of action; he definitely promises that he will buy of no one else. If he needs or requires or uses any of the named commodity, he must buy it from the one specified." (Emphasis added.) Corbin on Contracts (1952) 225-226, Section 156.

Appellant has not surrendered its privilege to buy elsewhere; nor has appellant promised to buy a specified item from one supplier only. Appellant's promises are illusory. The lack of exclusivity distinguishes both *Coca-Cola Bottling Corp.* v. *Kosydar* (1975), 43 Ohio St. 2d 186 [72 O.O.2d 104], and *General Mills Fun Group, Inc.* v. *Lindley* (1982), 1 Ohio St. 3d 27, from *General Motors Corp.* v. *Kosydar* (1974), 37 Ohio St. 2d 138 [66 O.O.2d 304], a case relied on heavily by the majority. It likewise distinguishes the instant case from *General Motors.*

The majority also found that the qualification process, the exclusive use element, and the confidentiality requirement supplied the necessary consideration for the transfers of the artwork. These promises are likewise illusory. Rather than constituting consideration for the artwork transferred, these bases are, in actuality, prerequisites to the awarding of the contract for packaging or advertising materials. The record

---

4 I would stress that the majority, in making this statement has relied on the facts in the record as interpreted by the appellant. The record in this case is unclear as to how business is allocated between suppliers. The majority agrees with the following interpretation of the record as set forth in appellant's reply brief: "A P&G supplier provides P&G's requirements for a specified size or sizes of a single product at only one of P&G's many plants." I would note in contrast that the appellee interprets the record as follows: "It [P&G] then allocates the business for a specific item among up to 15 or 20 suppliers and enters into requirements contracts for the production of the item for a term of one year."

In this regard, the first paragraph of the syllabus in *Citizens Financial Corp.* v. *Porterfield* (1971), 25 Ohio St. 2d 53 [54 O.O.2d 191], is instructive:

"The Supreme Court reviews decisions of the Board of Tax Appeals on questions of law. It is not the function of this court to substitute its judgment for that of the Board of Tax Appeals on factual issues, but only to determine from the record whether the decision rendered by the board is unreasonable or unlawful. * * * [Citations omitted.]"

demonstrates that a supplier must show, prior to even being considered as a potential supplier, that it can produce the quantity and quality prescribed by appellant. This showing must be made independent of receipt of the artwork. The qualification process, then, is a precondition to being considered as one of appellant's suppliers; it is not undertaken in exchange for artwork. Indeed, no legal detriment is suffered by a supplier should it fail to qualify as one of appellant's potential suppliers.

Nor do the promises to use the artwork only to produce appellant's products constitute consideration for the transfer of the artwork. Since only appellant's products are depicted in the artwork, the artwork cannot be used to produce materials for anyone else, as the board so aptly noted. Nor do the suppliers suffer any legal detriment as a consequence of the exclusive-use requirement. As discussed above, since the suppliers may produce material for others, the agreement lacks the element of exclusive dealing found essential in *San-A-Pure Dairy Co.* v. *Bowers* (1962), 173 Ohio St. 469 [20 O.O.2d 103], *General Motors, supra,* and *Coca-Cola, supra.*

The confidentiality requirement is also a condition precedent to the receipt of a contract from appellant rather than consideration for the transfer of the artwork. If this requirement is breached, the supplier, pursuant to the terms of the contract, will simply lose possession of the artwork. No legal detriment is suffered thereby.

Based on the foregoing, it is clear that transfer of the artwork by appellant to its suppliers was gratuitous. No consideration was freely bargained for and given in exchange for the artwork. There was no charge for the artwork and there were no promises to do something detrimental.

It being my opinion that appellant-taxpayer is not exempt from Ohio sales and use taxes by virtue of the "resale" provision of R.C. 5739.01(E)(1) and 5741.02(C)(2), I dissent.

LOCHER, J., concurs in the foregoing dissenting opinion.