DeGenaro, J., dissenting.
{¶ 38} I respectfully dissent from the judgment of a majority of this court to reverse the decision of the Board of Tax Appeals ("BTA"). The lead opinion reasons that because the promotional items purchased and distributed by appellant, Cincinnati Reds, L.L.C. ("the Reds"), were a separate and "explicit part of the bargain" when baseball fans purchased certain game tickets, the Reds acquired those items for the purpose of "reselling" them to the ticket purchasers and, consequently, that the Reds are not obligated to pay use tax on those items. Lead opinion at ¶ 24; see also id. at ¶ 32. I disagree. Because the ticket sales themselves are not taxed, the effect of reversing the decision of the BTA is to relieve the Reds' acquisition and transfer of the promotional items-which are tangible personal property-of any sales- or use-tax obligation, despite the fact that the sales tax and the use tax generally apply to such transactions. See R.C. 5739.01(B)(1) (for purposes of the sales tax, "sale" generally includes all transactions transferring title or possession of tangible personal property for consideration); R.C. 5741.02(B) (each consumer who uses tangible personal property in the state generally must pay use tax). In my view, the evidence presented in this case and the applicable law dictate the opposite result.
Legal Framework
{¶ 39} A consumer who has purchased tangible, personal property for storage, use, or other consumption in Ohio generally must pay use tax. See R.C. 5741.02(A)(1) and (B). Subject to an exception that is not relevant here, the use tax does not apply to the use of "tangible personal property or services, the acquisition of which, if *1188 made in Ohio, would be a sale not subject to the tax imposed by sections 5739.01 to 5739.31 of the Revised Code." R.C. 5741.02(C)(2). In other words, items that are exempt from sales tax are also generally exempt *523 from use tax. Accordingly, although this case involves a use-tax assessment, we focus on the provisions of R.C. Chapter 5739, the sales-tax chapter of the Revised Code. See Procter & Gamble Co. v. Lindley , 17 Ohio St.3d 71, 73, 477 N.E.2d 1109 (1985).
{¶ 40} Relevant here, pursuant to R.C. 5739.01(E), the definition of "retail sale" does not include those sales "in which the purpose of the consumer is to resell the thing transferred or benefit of the service provided." And in order for a transaction to constitute a "sale," it must be "for a consideration." R.C. 5739.01(B).
{¶ 41} The main issue in this case is whether the sale-for-resale exception of R.C. 5739.01(E) relieves the Reds from having to pay use tax on promotional items, such as bobbleheads, that they distribute at games.
The BTA's Factual Findings Should Be Afforded Deference
{¶ 42} My principal point of disagreement lies with the lead opinion's determination that the BTA's finding that the Reds intended to give away promotional items rather than to sell them "is not supported by any reliable and probative evidence found in the record" (emphasis added) and that the BTA's decision is therefore "unreasonable and unlawful." Lead opinion at ¶ 19. In the same vein, I disagree with the lead opinion's conclusion that the evidence unequivocally establishes that fans gave consideration in exchange for the promotional items.
{¶ 43} In the BTA proceedings, the Reds bore the burden to demonstrate that they intended to resell the promotional items. Satullo v. Wilkins , 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 27 ; R.C. 5739.02(C) (all sales are presumed taxable "until the contrary is established"); R.C. 5741.02(G) (the same presumption applies regarding use tax). The BTA concluded that the Reds failed to meet this burden. We must affirm the BTA's factual findings " 'if they are supported by reliable and probative evidence, and we afford deference to the BTA's determination of the credibility of witnesses and its weighing of the evidence subject only to an abuse-of-discretion review on appeal.' " Accel, Inc. v. Testa , 152 Ohio St.3d 262, 2017-Ohio-8798, 95 N.E.3d 345, ¶ 16, quoting HealthSouth Corp. v. Testa , 132 Ohio St.3d 55, 2012-Ohio-1871, 969 N.E.2d 232, ¶ 10.
{¶ 44} Here, the evidence demonstrates that the Reds' pregame advertising often stated that such items were available as a "giveaway," that they would be distributed for "free," and that quantities were limited (e.g., "Free to the first 20,000 fans in attendance"). The game tickets contained no written guarantees that fans who bought tickets would receive the promotional items. The Reds' chief financial officer ("CFO") testified at the BTA hearing that the Reds provided season-ticket holders greater "access to promotional items" by allowing them to enter the stadium 30 minutes earlier than single-game ticket holders. Evidence in *524 the record shows that on most promotional-item-giveaway days, thousands of fans-sometimes more than 10,000 -did not receive the promotional item. According to the Reds' CFO, if a fan who did not receive an item complained, the Reds would "make accommodations" to remedy the situation. Typically, the Reds would provide a substitute promotional item to an aggrieved fan, but if a person complained enough, the Reds would refund the full ticket price.
{¶ 45} Moreover, although the Reds' CFO testified at the BTA hearing that "there's a real cost" associated with the *1189 promotional items that is "part of the admission," he also emphasized that advertising the promotional giveaways provided "an incremental ticket lift" that was important because the Reds "are in the business of selling tickets " (emphasis added)-in other words, the Reds were not in the business of reselling those promotional items but instead distributed them to promote ticket sales. And although-like any other overhead expense-the cost of promotional items was apparently built into ticket prices overall, the record clearly supports the BTA's finding that "the ticket price for each particular seat is the same * * *, regardless of whether a promotional item is being offered," BTA No. 2015-1707, 2017 WL 2324085, *2 (May 22, 2017). The Reds' CFO stated that the ticket prices for a particular game were not dependent on the Reds' providing promotional items at that game.
{¶ 46} Thus, the BTA was justified in concluding that the purchase of a game ticket constituted consideration for nothing more than the right to attend the baseball game and that the Reds were not reselling the promotional items by advertising and giving them away free of any charge beyond the price of the ticket-as the Reds' CFO testified, the Reds were "driv[ing] additional ticket attendance" by distributing the promotional items. Incentivizing paid attendance at the games does not-at least not necessarily , as the lead opinion contends-involve "reselling" the promotional items.
{¶ 47} I disagree with the lead opinion's conclusion that the ticket purchasers provided consideration for the promotional items. The lead opinion notes that the cost of promotional items was built into all ticket prices before the season, with no separate charge for the promotional item offered at a particular game, and it concludes that "by including the cost of the promotional item in the ticket price, one portion of the ticket price accounts for the right to attend the less desirable game and a separate portion of the ticket price accounts for the right to receive the promotional item." Lead opinion at ¶ 22. But that means that every ticket purchaser at every game helped pay for promotional items regardless of whether a promotional item was received-or was even offered-at a particular game, and that circumstance breaks the link between the payment of the ticket price and the offer of a promotional item.
*525 {¶ 48} The facts that the Reds' CFO testified that the fans have "a certain level of expectation that they will receive the bobblehead" and that he answered "yes" to the Reds' counsel's assertion that the fans "feel entitled to the promotional items" are not dispositive of this consideration either. Insofar as the CFO was providing his opinion-unrefuted or not-about the subjective beliefs of third parties, the BTA could have reasonably discounted that testimony. Regardless, the CFO also later described the fans' "expectation" as simply being that the Reds would, in fact, distribute the number of promotional items advertised. That is, the CFO explained that "there is an expectation when we put it out to the marketplace that if we say we're going to have * * *, let's say 30,000 bobbleheads, that the Reds are going to have 30,000 bobbleheads" and that "there is an expectation, especially if they arrive early , that they're going to get a promotional item." (Emphasis added.)
{¶ 49} Under these circumstances, the BTA could lawfully conclude that the offer of the promotional items did not constitute a contractual obligation supported by the purchase of the tickets. Rather, the situation here was in the nature of what courts have referred to as a "conditional gratuitous promise,"
*1190 Williams v. Ormsby , 131 Ohio St.3d 427, 2012-Ohio-690, 966 N.E.2d 255, ¶ 17, quoting Carlisle v. T & R Excavating, Inc ., 123 Ohio App.3d 277, 283, 704 N.E.2d 39 (9th Dist.1997) (" 'conditional gratuitous promises, which require the promisee to do something before the promised act or omission will take place, are not enforceable as contracts' "). Indeed, " '[a] written gratuitous promise, even if it evidences an intent by the promisor to be bound, is not a contract.' " Id. , quoting Carlisle at 283, 704 N.E.2d 39. Thus, the written materials announcing the limited availability of promotional items to ticket purchasers who attend a particular game do not as a matter of contract law establish a contract under which both sides furnish consideration.
{¶ 50} The lead opinion's interpretation of the evidence confuses the business motive of the Reds to provide promotional items that have already been promised with a contractual obligation to do so. The evidence demonstrates the former but does not establish the latter.
Hyatt Corp. v. Limbach Is Apposite
{¶ 51} My second point of disagreement with the lead opinion lies in its attempt to distinguish our decision in Hyatt Corp. v. Limbach , 69 Ohio St.3d 537, 634 N.E.2d 995 (1994). In Hyatt Corp. , a hotel operator that contracted with third-party companies to launder the linens it supplied to its guests argued that the linen-cleaning service was resold to its guests and therefore did not qualify as a "retail sale" pursuant to R.C. 5739.01(E). Id. at 539, 634 N.E.2d 995. The hotel served two types of guests: transient and long-term. Pursuant to R.C. 5739.01(B)(2), lodging furnished to "transient guests" constitutes a sales-tax sale, but no provision *526 makes the renting of rooms to long-term guests a taxable transaction. Accordingly, this court held that the sale-for-resale exception did not apply in situations involving long-term guests:
The BTA correctly concluded that linen used in rooms rented to long-term guests was not resold. Under the statutes, renting these rooms is not a sale because lodging is not sold to a transient guest, and, consequently, the cleaning service is not resold. Accordingly, this linen cleaning transaction is not excepted.
Hyatt Corp . at 540, 634 N.E.2d 995.
{¶ 52} Although the lead opinion concedes that the Reds' sale of game tickets-like the sale of lodging to the long-term guests in Hyatt Corp. -is not a sales-tax "sale," it nonetheless determines that Hyatt Corp. is inapposite because the evidence in this case reveals a specific bargain for the promotional items that was supposedly absent when hotel guests rented rooms and thereby received the benefit of clean sheets and linens in Hyatt Corp .
{¶ 53} However, I disagree with the lead opinion's conclusion that this court in Hyatt Corp. "found that the linen-cleaning service was not a separate and explicit part of the bargain by which lodging was provided," lead opinion at ¶ 32, and that Hyatt Corp . therefore is factually distinguishable from this case. In Hyatt Corp ., we explained that "[i]n a lodging transaction, the hotel transfers a full sleeping room to its guest. This transfer includes the use of linens to sleep on and to wash with." Hyatt Corp . at 540, 634 N.E.2d 995. As a distinct component of the room rental, "guests received the benefit of [the linen-cleaning] service in being able to use clean linen." Id.
{¶ 54} Contrary to the lead opinion's conclusion, Hyatt Corp. 's holding should apply to this case. Because providing long-term lodging for consideration was not a sales-tax sale, the hotel operator did not "resell" the benefit of cleaning service to those guests. By the same logic, the Reds *1191 did not resell the promotional items here, because the sale of game tickets was not a sales-tax sale. Consequently, the Reds should, by the same reasoning as that applied in Hyatt Corp. , be liable for use tax as the consumer of the promotional items based on the Reds' own purchase of them.
{¶ 55} In sum, the BTA's decision should be affirmed. The Reds offered and distributed the promotional items gratuitously; as a result, the Reds owed tax as the purchaser and the use-tax consumer of the items. Accordingly, I respectfully dissent.
Mayle, J., concurs in the foregoing opinion.