AMERICAN BOOK CO., APPELLANT, *v.* PORTERFIELD, TAX COMMR., APPELLEE.

50

(No. 68-649—Decided April 30, 1969.)

*Messrs. Wright, Harlor, Morris, Arnold & Glander, Mr. Charles F. Glander* and *Mr. John C. Hartranft,* for appellant.

*Mr. Paul W. Brown,* attorney general, and *Mr. George M. Hauswirth,* for appellee.

HERBERT, J. The single question raised by this appeal is whether the printing plates used by appellant are excluded from personal property taxation under the provisions of Section 5701.03, Revised Code. This statute defines personal property for tax purposes in the following manner:

"As used in Title LVII [taxation] of the Revised Code, 'personal property' includes every tangible thing which is subject of ownership, whether animate or inanimate, *other than patterns, jigs, dies, or drawings, which are held for use and not for sale in the ordinary course of business,* money, and motor vehicles registered by the owner thereof, and not forming a part of a parcel of real property * * *. The exclusion of patterns, jigs, dies, and drawings from the definition of 'personal property' by this

section shall not be deemed an exclusion of the value of same from taxation when such value may enter into the valuation of inventory produced for sale." (Emphasis added.)

This exclusion was enacted in 1931 (114 Ohio Laws 714, 716) and research discloses several important tax determinations thereunder. In the earliest reported case requiring its interpretation, the Court of Appeals held that tire molds used in the rubber industry were in fact *dies* or *patterns* within the meaning of the statutory exclusion. *Mong* v. *B. F. Goodrich Co.* (1935), 19 Ohio Law Abs. 198. In *National Tube Co.* v. *Tax Commission* (1937), 26 Ohio Law Abs. 523, affirmed, 25 Ohio Law Abs. 619, 31 N. E. 2d 486, certain "rolls, guide shoes, piercing points, plugs and welding balls," as these items were known to the steel industry, used in forming steel products, were excluded from taxation under the statute as *dies*. Glass molds, used in the production of pressed and blown glassware with figures or designs on the exterior were held by the Board of Tax Appeals to be *dies* for tax purposes in *Cambridge Glass Co.* v. *Evatt* (1940), 19 Ohio Ops. 162.

In *Colonial Foundry Co.* v. *Peck* (1952), 158 Ohio St. 296, 109 N. E. 2d 11, this court held various flasks, cast iron shapes, weights and clamps, used in the manufacture of iron and alloy castings of special and varying designs, exempt from taxation as *dies*. Distinguishing ingot molds, held taxable in *Wheeling Steel Corp.* v. *Evatt* (1944), 143 Ohio St. 71, 98, 54 N. E. 2d 132, 144, the court quoted with approval from the entry of the Board of Tax Appeals in that earlier case:

"* * * Ingot molds are nothing more than receptacles to hold molten steel or pig iron to an average weight, size and shape for convenience in further processing. * * * The word 'dies' contemplates that such an instrument, tool or contrivance, or any application of several implements used to exert force from within or without, will form and shape a finished or semifinished product with the precision and nicety that the consumer demands. * * *" *Colonial Foundry Co.* v. *Peck, supra,* at 299-300.

The court added: ''A fair construction of Section 5325 [General Code, now Section 5701.03, Revised Code,] would limit the definition of 'dies' to those *special types which by their nature are capable of only special uses* as distinguished from the molds with which the *Wheeling Steel case, supra,* was concerned.'' (Emphasis added.) Id., at 301.

The limitation of special purpose implies that general purpose implements and devices are not exempt, and lends itself to a determination that where a machine's sole purpose and use is to imprint or impress specially designed irregularities in the surface of one or more of its parts upon material placed in the machine, those parts which have such specially designed surfaces are dies within the meaning of Section 5701.03, Revised Code. The printing plates owned by appellant bear the design or pattern comprising the titles, texts and illustrations of appellant's particular publications. They are used in letterpress and offset printing presses to impress and imprint this special design upon material, *i. e.,* paper which becomes the pages of appellant's books.

The Tax Commissioner argues that the printing plates are not dies, in the context of that term as used in the statute and interpreted in the foregoing tax decisions, for the reason that the purpose of printing is to transfer ink to paper rather than to form such paper into a product.

However, printing does not involve the random transfer of ink to paper, but the formation or deposit of ink on paper in the precise image of the special design or pattern of the plate. The fact that ink and water are used as agents in the imprinting or impressing process does not destroy the nature and quality of the printing plates or change them into something else. Neither does indirection in the use of an intermediate rubber blanket, which receives the impression of an offset plate, impair the classification of such plate as a die. In *Colonial Foundry, supra,* the flasks held to be dies were used indirectly to form sand which in turn imparted a special design to the metal cast therein. In this case, the printing plates alone bear the

54

specially formed design or pattern which is imparted to the paper in the process of printing.

For these reasons, appellant's flatbed and curved letterpress, cover and offset printing plates are dies for tax purposes, and are excluded from the definition of personal property subject to taxation under Section 5701.03, Revised Code. Accordingly, the decision of the Board of Tax Appeals that such printing plates were not exempt from taxation is unreasonable and unlawful, and is reversed.

*Decision reversed.*

TAFT, C. J., MATTHIAS, O'NEILL, SCHNEIDER and DUNCAN, JJ., concur.

ZIMMERMAN, J., dissents.