CAMPUS BUS SERVICE, APPELLANT, *v.* ZAINO,
TAX COMMR., APPELLEE. (TWO CASES.)

[Cite as *Campus Bus Serv. v. Zaino,*
98 Ohio St.3d 463, 2003-Ohio-1915.]

(Nos. 2002–0914 and 2002–0915—Submitted February
12, 2003—Decided April 30, 2003.)

LUNDBERG STRATTON, J.

{¶ 1}  The question presented by these cases is whether the buses being operated by Campus Bus Service ("CBS") during late 1999 and early 2000 were operated "by or for" the city of Kent and therefore entitle CBS to a refund of motor fuel tax.  We find that CBS is not entitled to a refund.

{¶ 2}  These cases have been consolidated by the court for hearing and decision.  In both cases, CBS has filed a claim for a refund of motor vehicle fuel taxes.  The claim for refund in case No. 2002–0914 covers October 1, 1999, through December 31, 1999.  The claim in case No. 2002–0915 covers January 1, 2000, through March 31, 2000.

{¶ 3}  CBS is a transportation service owned and operated by Kent State University ("KSU").  CBS operates 20 buses at any one time on its scheduled routes.  The buses have seating capacities ranging from 29 to 47 persons.

{¶ 4}  Some of CBS's scheduled routes serve only campus areas.  Other routes, while starting on the campus, travel through Kent and into adjoining townships.  In addition to its scheduled routes, CBS provides campus and airport shuttles and transportation for disabled students.[1]  During the school term, CBS also provides buses for students and commuters who travel to and from Cleveland.  Other CBS routes connect with the Akron Metro Regional Transit Authority and the Portage Area Regional Transit Authority.

{¶ 5}  Travel within the KSU campus area is free.  Travel off the campus is at no additional charge for KSU students, who pay a per-credit-hour transportation fee.  Nonstudents who use the buses in Kent or adjoining townships pay a fare.

{¶ 6}  CBS has no contract, understanding, or financial arrangement of any type with Kent. CBS has no contract or financial arrangements with either the Portage Area Regional Transit Authority or the Akron Metro Regional Transit Authority.  About 86 percent of CBS's expenses are covered by KSU student fees.

{¶ 7}  Both the Tax Commissioner and the Board of Tax Appeals denied CBS's claims for reimbursement of motor vehicle fuel tax, finding that CBS's buses did not meet the definition of "transit bus" set forth in R.C. 5735.01(Q).

---

1.  The tax paid on motor fuel that supports these services is not at issue here.

{¶ 8} This court considered the topic of reimbursement of motor vehicle fuel tax in *Lakefront Lines, Inc. v. Tracy* (1996), 75 Ohio St.3d 627, 629, 665 N.E.2d 662, and held that a claim for reimbursement of motor vehicle fuel tax is to be treated as an exemption from taxation. As an exemption from taxation, the statute granting the exemption must be strictly construed, and the person claiming the exemption must affirmatively establish his or her right thereto. *Natl. Tube Co. v. Glander* (1952), 157 Ohio St. 407, 47 O.O. 313, 105 N.E.2d 648, paragraph two of the syllabus.

{¶ 9} The statutory provision under which CBS seeks reimbursement of the motor vehicle fuel tax is R.C. 5735.142, which provides:

{¶ 10} "Any person who uses any motor fuel, on which the tax imposed by sections 5735.05, 5735.25, and 5735.29 of the Revised Code has been paid, for the purpose of operating a transit bus shall be reimbursed in the amount of the tax paid on motor fuel used by public transportation systems providing transit or paratransit service on a regular and continuing basis within the state."

{¶ 11} The term "transit bus" used in R.C. 5735.142 is defined in R.C. 5735.01(Q), which provides:

{¶ 12} "As used in this chapter:

{¶ 13} "* * *

{¶ 14} "(Q) 'Transit bus' means a motor vehicle having a seating capacity of more than ten persons which is *operated* for public transit or paratransit service on a regular and continuing basis within the state *by or for* a county [or] *a municipal corporation* * * *." (Emphasis added.)

{¶ 15} Thus, for the purposes of this case, R.C. 5735.01(Q) sets forth three requirements that a motor vehicle must meet in order to be a "transit bus," therefore entitling its owner to fuel tax reimbursement:

{¶ 16} 1. Have "a seating capacity of more than ten persons."

{¶ 17} 2. Be "operated for public transit * * * on a regular and continuing basis within the state."

{¶ 18} 3. Be operated *"by or for* * * * a municipal corporation * * *." (Emphasis added.)

{¶ 19} The controversy in this case centers on requirement three. CBS contends that it meets this criterion because its buses are operated "for the benefit of" the city of Kent. Citing dictionaries, CBS asserts that "for" in R.C. 5735.01(Q) requires only the bestowing of a benefit upon Kent and does not require the bus service to be under the control of a municipality or provided pursuant to a contract.

{¶ 20}   The Tax Commissioner contends that CBS is not properly defining "for" when asserting that the buses are operated "by or for" Kent.

{¶ 21}   The words "by" and "for" as used in R.C. 5735.01(Q) are not defined in the statute.   R.C. 1.42 provides, "Words and phrases shall be read in context and construed according to the rules of grammar and common usage."   Furthermore, "[t]o determine the common, everyday meaning of a word, we have consistently used dictionary definitions."   *State v. Wells* (2001), 91 Ohio St.3d 32, 34, 740 N.E.2d 1097.   When we look at the dictionary definitions of the word "by," the most appropriate in the context of R.C. 5735.01(Q) is "through the means or instrumentality of."   Webster's Third New International Dictionary (1993) 307.   Likewise, the first appropriate definition for the word "for" is "in behalf of."   Webster's Third New International Dictionary (1993) 886.   Thus, to be "transit buses" within the meaning of R.C. 5735.01(Q), CBS's buses must be operated either "through the means or instrumentality" of a municipal corporation (Kent) or "in behalf of" a municipal corporation (Kent).

{¶ 22}   The facts in this case fail to support CBS's contention that the buses were operated either "through the means or instrumentality of" Kent, or "in behalf of" that city.   The buses are operated "by" KSU, not Kent. While the buses may have benefited some of Kent's residents, there are no facts to show that Kent, as a corporate entity, had any involvement in the operation of the buses or that the buses were operated for its benefit.   Mere use of streets and bus stops located in the city is not evidence that the buses are being operated by or for it.

{¶ 23}   Therefore, we find the decisions of the BTA to be reasonable and lawful, and we affirm them.

Decisions affirmed.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, BRYANT and O'CONNOR, JJ., concur.

THOMAS F. BRYANT, J., of the Third Appellate District, sitting for COOK, J.

---

Amer Cunningham Co., L.P.A., Andrew R. Duff and Thomas R. Houlihan, for appellants.

Jim Petro, Attorney General, and Richard C. Farrin, Assistant Attorney General, for appellee.