A. Schulman, Inc., Appellee, *v.* Levin, Tax Commr., Appellant.

[Cite as *A. Schulman, Inc. v. Levin,*
116 Ohio St.3d 105, 2007-Ohio-5585.]

(No. 2006–1944—Submitted September 12, 2007—Decided October 25, 2007.)

Lundberg Stratton, J.

{¶ 1} The Board of Tax Appeals ("BTA") concluded in the proceedings below that certain devices used by an Akron manufacturer should be exempt from Ohio's personal property tax. For the reasons that follow, we reverse that decision.

## Facts

{¶ 2} Appellee, A. Schulman, Inc., produces plastic resins and compounds, which it then sells to manufacturers of consumer, industrial, automotive, and packaging products. The company is headquartered in Akron, Ohio, with manufacturing facilities and distribution centers located in Ohio and elsewhere.

{¶ 3} After A. Schulman paid personal property taxes for tax years 1999, 2000, and 2001, the company asked the Tax Commissioner to reduce the taxable value of some of its tangible personal property. According to A. Schulman, some of its manufacturing equipment should be designated as "dies," which are not taxable items of personal property in Ohio. The Tax Commissioner prepared a written decision in which he concluded that some of the property designated by A. Schulman as dies did not in fact "satisfy the definition of * * * a die," and therefore "should remain taxable."

{¶ 4} A. Schulman appealed to the BTA, which held a hearing on the matter in October 2004. A. Schulman presented the testimony of two witnesses: its facility manager from the company's Akron manufacturing plant and its corporate tax manager. In its September 2006 decision, the BTA agreed with A. Schulman that the property at issue "meets the requirements and definition of a 'die,'" and the BTA therefore reversed the Tax Commissioner's determination.

{¶ 5} The Tax Commissioner has filed this appeal as of right from the BTA's decision.

## Standard of Review

{¶ 6} In reviewing a decision of the BTA, this court considers whether the decision was "reasonable and lawful." *Columbus City School Dist. Bd. of Edn. v. Zaino* (2001), 90 Ohio St.3d 496, 497, 739 N.E.2d 783. This court "will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion." *Gahanna–Jefferson Local School Dist. Bd. of Edn. v. Zaino* (2001), 93 Ohio St.3d 231, 232, 754 N.E.2d 789. But "[t]he BTA is responsible for determining factual issues and, if the record contains reliable and probative support for these BTA determinations," this court will affirm them. *Am. Natl. Can Co. v. Tracy* (1995), 72 Ohio St.3d 150, 152, 648 N.E.2d 483.

{¶ 7} As for the burden of proof, it rests on the taxpayer "to show the manner and extent of the error in the Tax Commissioner's final determination." *Stds. Testing Laboratories, Inc. v. Zaino,* 100 Ohio St.3d 240, 2003-Ohio-5804, 797 N.E.2d 1278, ¶ 30. The Tax Commissioner's findings "are presumptively valid, absent a demonstration that those findings are clearly unreasonable or unlawful." *Nusseibeh v. Zaino,* 98 Ohio St.3d 292, 2003-Ohio-855, 784 N.E.2d 93, ¶ 10. Any claimed exemption from taxation "must be strictly construed," and the taxpayer must affirmatively establish a right to the exemption. *Campus Bus Serv. v. Zaino,* 98 Ohio St.3d 463, 2003-Ohio-1915, 786 N.E.2d 889, ¶ 8. See also R.C. 5715.271 ("the burden of proof shall be placed on the property owner to show that the property is entitled to exemption"). "In all doubtful cases exemption is denied." *Youngstown Metro. Hous. Auth. v. Evatt* (1944), 143 Ohio St. 268, 273, 28 O.O. 163, 55 N.E.2d 122.

## Analysis

{¶ 8} Under R.C. 5709.01(B)(1), personal property located and used in business in Ohio is subject to taxation, but R.C. 5701.03(A) excludes from the definition of personal property any "dies * * * that are held for use and not for sale in the ordinary course of business."

{¶ 9} The court has variously described dies as (1) devices that " 'through applied force, impose their shape' " on an object under production, *Timken Co. v. Lindley* (1985), 17 Ohio St.3d 85, 87, 17 OBR 208, 477 N.E.2d 1121, quoting the BTA, (2) "piece[s] of equipment or tooling that [are] capable of forming or creating a part, either by pressure or molding techniques," *Gen. Motors Corp. v. Kosydar* (1974), 37 Ohio St.2d 138, 139, 66 O.O.2d 304, 310 N.E.2d 154, (3) devices that "form the desired metal, rubber or plastic part when pressure is applied by mechanical or hydraulic presses," id., (4) parts with "specially designed surfaces" in a machine whose "sole purpose and use is to imprint or impress specially designed irregularities * * * upon material placed in the machine," *Am. Book Co. v. Porterfield* (1969), 18 Ohio St.2d 49, 53, 47 O.O.2d 164, 247 N.E.2d 290, and (5) special devices "which by their nature are capable of only special uses" for

impressing, shaping, or forming something, *Colonial Foundry Co. v. Peck* (1952), 158 Ohio St. 296, 301, 49 O.O. 132, 109 N.E.2d 11. Similarly, the BTA has defined a die as "a metallic appliance which, by means of pressure used in connection therewith, serves to give a desired shape or form to some softer material." *Cambridge Glass Co. v. Evatt* (1940), 19 O.O. 162, 164.

{¶ 10} William Ratliff, who serves as the facility manager for A. Schulman's Akron manufacturing plant, testified at the BTA hearing that the company heats resin and other materials inside "barrel and screw" devices so that the mixture melts and turns into taffy-like molten plastic. As the heat is applied, according to Ratliff, the screw inside the barrel "convey[s] the material to the die" at the end of the barrel, and then the molten plastic "goes through the die," which shapes the plastic into small pellets as the material exits the barrels. Ratliff noted that "you may have different shapes [for the pellets], depending on the type of die that it goes through," but "[t]he screw and barrel would stay the same" as different dies are swapped in and out to meet the needs of A. Schulman's customers, who use the pellets as raw materials for a variety of plastic products.

{¶ 11} In his written decision in 2004, the Tax Commissioner agreed with A. Schulman that the dies themselves are exempt from Ohio's personal property tax. He concluded, however, that "[t]he barrel and screw simply push the product through the die," and therefore those items "do not satisfy the definition of * * * a die and should remain taxable."

{¶ 12} Based on William Ratliff's testimony described above, the BTA reached the opposite conclusion with respect to the barrel-and-screw devices, finding that "the subject equipment meets the requirements and definition of a 'die.'"

{¶ 13} The BTA's decision is not supported by the record. Ratliff drew a distinction in his testimony between the barrel-and-screw devices on the one hand and the dies at the end of each barrel on the other, noting that "[t]he screw and barrel would stay the same" even as different dies might be placed at the end of the barrel to produce plastic pellets of different sizes. The barrel-and-screw devices themselves do not "impose their shape" on an object under production. *Timken Co. v. Lindley*, 17 Ohio St.3d at 87, 17 OBR 208, 477 N.E.2d 1121 (applying *Am. Book*'s definition of "die"). As Ratliff explained, the plastic pellets produced by A. Schulman take their shape not from the barrels themselves but rather from the dies at the end of each barrel. The record demonstrates that it is the dies at the end of the barrels that "form the desired metal, rubber or plastic part when pressure is applied by mechanical or hydraulic presses." *Gen. Motors Corp. v. Kosydar*, 37 Ohio St.2d at 139, 66 O.O.2d 304, 310 N.E.2d 154. The barrel-and-screw devices provide the pressure that moves the molten plastic material to and through the dies, but those devices are not themselves "dies." And there is no testimony in the record to show that the barrel-and-screw devices

have "specially designed surfaces" as dies do.  See *Am. Book Co. v. Porterfield*, 18 Ohio St.2d at 53, 47 O.O.2d 164, 247 N.E.2d 290.

{¶ 14} This court has confined the definition of "die" to *"those parts"* of a machine that have "specially designed surfaces" for "imprint[ing] or impress[ing] special designs * * * upon material placed in such machine." (Emphasis added.) Id., paragraph one of the syllabus.  The dies in A. Schulman's machines have specially designed surfaces to create pellets of varying sizes, but the barrel-and-screw devices through which the molten plastic passes do not have any such specially designed surfaces.  The barrel-and-screw devices are akin to the "machine" described in *Am. Book*, but they are not themselves the parts of that machine that are entitled to the tax exemption that Ohio accords to dies.

{¶ 15} To be sure, this court did treat some "flasks, cast iron shapes, weights, and clamps" as dies in the earlier case of *Colonial Foundry Co. v. Peck*, 158 Ohio St. at 298, 49 O.O. 132, 109 N.E.2d 11.  But the flasks at issue in that case were each specially made according to customers' needs, and molten metal was poured into them to make special-order castings.  Id. at 297, 49 O.O. 132, 109 N.E.2d 11. The castings were formed by the "forcible retention" of heated steel in the shape of patterns inside the flasks, and "reuse of any of the flasks [was] unusual for the reason that most of the company's orders [were] for castings made according to special requirements."  Id. at 297 and 299, 49 O.O. 132, 109 N.E.2d 11.

{¶ 16} The barrel-and-screw devices in this case are different.  As William Ratliff testified, "[t]he screw and barrel would stay the same" even as different dies are swapped in and out at the end of the barrel to suit different customers' needs.  He explained that "you wouldn't have to change the barrel and screw" when a new die was added to replace a damaged die or to vary the plastic pellet size requested by a particular customer.

{¶ 17} In response, A. Schulman argues first that R.C. 5701.03(A) should be construed in favor of taxpayers rather than the Tax Commissioner, because it is a definition of a subject of taxation, i.e., "personal property," rather than an exemption.  But this court has repeatedly noted that that statutory provision creates a tax *exemption* for dies, as well as other objects not at issue here.  See, e.g., *Natl. Distillers & Chem. Corp. v. Limbach* (1994), 71 Ohio St.3d 214, 217, 643 N.E.2d 101 ("R.C. 5701.03 exempts drawings from the personal property tax"); *Timken Co. v. Lindley*, 17 Ohio St.3d at 86, 17 OBR 208, 477 N.E.2d 1121 ("The function of a particular device, rather than its form, is paramount in determining its exemption under R.C. 5701.03 as a * * * die"); *Am. Book*, 18 Ohio St.2d at 54, 47 O.O.2d 164, 247 N.E.2d 290 (holding certain printing plates to be "exempt from taxation" under R.C. 5701.03 because they were dies).  As a tax-exemption provision, R.C. 5701.03(A) "must be strictly construed," *Campus Bus Serv. v. Zaino*, 98 Ohio St.3d 463, 2003-Ohio-1915, 786 N.E.2d 889, ¶ 8, and the burden of

proof rests with A. Schulman "to show that the property is entitled to exemption." R.C. 5715.271. A. Schulman has not met that burden.

{¶ 18} The company also presses for what it calls a "flexible" definition of the term "die," but as explained above, the barrel-and-screw devices do not have the kind of specially designed surface required of dies, and they do not impose their shape on the molten plastic pellets that A. Schulman produces. The Tax Commissioner has already properly characterized as dies the pieces at the end of the barrel-and-screw assemblies, but only by sidestepping decades of precedent could the court characterize as dies the barrel-and-screw devices themselves. The BTA failed to accord the Tax Commissioner's findings the presumption of correctness that those findings deserved, and there is no reliable and probative evidence in the record to support the BTA's contrary conclusion designating the barrel-and-screw devices as dies.

{¶ 19} The Tax Commissioner also contends that no evidence in the record before the BTA demonstrates the cost of the barrel-and-screw devices for which A. Schulman sought a tax exemption. Absent that cost information—the Tax Commissioner argues—A. Schulman has not met its burden of proving the dollar value of the property that the company believes should be exempt from taxation. Because A. Schulman is not entitled to a tax exemption in any amount for the barrel-and-screw devices, we need not address this additional argument by the Tax Commissioner.

## Conclusion

{¶ 20} We reverse the BTA's decision granting an R.C. 5701.03(A) exemption to A. Schulman's barrel-and-screw devices. Those devices are distinct from the dies that *are* exempt, and they do not themselves satisfy the definition of "dies" as the court has long defined that term. The BTA's decision designating the barrel-and-screw devices as dies and granting a tax exemption for them was unreasonable and unlawful given the absence of reliable and probative evidence refuting the Tax Commissioner's contrary findings.

Decision reversed.

MOYER, C.J., and PFEIFER, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

———————————

Leonard A. Carlson; and Vorys, Sater, Seymour & Pease, L.L.P., Raymond D. Anderson, and Kevin M. Czerwonka, for appellee.

Marc Dann, Attorney General, and Barton A. Hubbard, Assistant Attorney General, for appellant.