[Cite as *State v. Leib*, 2024-Ohio-1081.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
MEIGS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. 23CA4 |
| v. | : | |
| WAYNE LEIB, | : | DECISION AND JUDGMENT ENTRY |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

James K. Stanley, Meigs County Prosecuting Attorney, Pomeroy, Ohio, for appellee.

Christopher Bazeley, Cincinnati, Ohio, for appellant.[1]
_____
CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:3-18-24
ABELE, J.

{¶1}  This is an appeal from a Meigs County Common Pleas Court judgment of conviction and sentence for aggravated murder.

{¶2}  Wayne Leib, defendant below and appellant herein, assigns two errors for review:

> FIRST ASSIGNMENT OF ERROR:
>
> "BECAUSE LIEB HAD TO SPECULATE AS TO WHETHER HE
> HAD THE INTENT TO COMMIT AGGRAVATED MURDER, HIS
> GUILTY PLEA WAS NOT KNOWINGLY, VOLUNTARILY, OR

_____

[1] Different counsel represented appellant during the trial court proceedings.

MEIGS, 23CA4

INTELLIGENTLY GIVEN."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT'S SENTENCE IS CONTRARY TO LAW
BECAUSE IT CONSIDERED LIEB'S SILENCE AS A LACK
OF REMORSE."

{¶3} On September 30, 2022, appellant, who was homeless, rode his bicycle to the victim's residence and killed the victim with a firearm.  Eyewitnesses heard a gunshot and observed appellant hurriedly leave the residence on his bicycle.  When law enforcement found appellant, another eyewitness stated that appellant admitted that he killed the victim and hid the firearm at that location.  Appellant later said that he killed the victim because he believed the victim molested children.

{¶4} In November 2022, a Meigs County Grand Jury returned an indictment that charged appellant with one count of aggravated murder in violation of R.C. 2903.01(A) and one count of murder in violation of R.C. 2903.02(A), both with firearm specifications and both unclassified felonies.  Appellant pleaded not guilty by reason of insanity (NGRI), and the trial court ordered an assessment.

{¶5} Appellant's psychological evaluation revealed that he had been hospitalized for 12 days in 2019 and has a history of bipolar disorder, schizophrenia and "self-injurious behavior consisting of punching himself and using heroin to cope with hallucinations."

Appellant has "been homeless and * * * using substances," reported hearing voices telling him to hurt himself, reported feeling that he is "being watched, targeted, and followed for the last three years," and believed "smoke-like figures" that were "demon[s] in the Bible hundreds of years ago" put "thoughts in his head for years."

{¶6} The evaluation further provided that appellant "spoke coherently and relevantly and had no indication of a formal thought disorder at the time of the interview." In addition to daily illicit drug use, clinical impressions included that appellant "has a severe mental illness, schizoaffective disorder, which in his case involves hallucinations, delusions, and magical thinking, as well as mood symptoms, including unstable mood, periods of mania, depression, and anxiety." The evaluation also revealed that appellant stated that he killed the victim to avenge the victim's alleged victimization of children. The report specified that appellant fled the scene, hid incriminating evidence, and refused to speak when interrogated. The evaluation concluded that appellant "had a severe mental disease, but not a mental defect, at the time of the offense, but that a severe mental disease or defect *did not* cause the defendant to fail to know the wrongfulness of his actions at the time of the offense charged."

{¶7} At the change of plea hearing, appellant indicated that he consulted with his attorney, who read the plea agreement to him, and expressed satisfaction with his representation. Appellant also acknowledged that he understood the plea agreement, the allegations contained in the indictment, the rights he waived with his guilty plea, and possible penalties. The trial court specified that the sentence is mandatory, that appellant is ineligible for community control and judicial release, must pay costs, and, if released, will be on parole for the remainder of his life.

{¶8} When the trial court questioned appellant about the underlying facts, appellant stated, "Uh, just basically like what it said. I, you know, I shot Dwayne Qualls. Took his life on that day." When the trial court asked, "So, [you] shot him with the intent of killing him," appellant replied, "I suppose so, yea." Consequently, appellant withdrew his not guilty plea and pleaded guilty to one count of aggravated murder in violation of R.C. 2903.01(A).

{¶9} After the plea hearing, the trial court immediately proceeded to sentencing. After the state and the defense spoke, the court asked, "Mr. Leib, do you have anything to say on your own behalf or to present any information in mitigation of punishment?"

Appellant replied, "no." The court asked, "[d]on't want to say anything at all?" Appellant replied, "No, ma'am."

{¶10} In reviewing the sentencing factors, the trial court noted, "Um, the Court has not had the opportunity to look at whether or not there's remorse because there's no * * * no statement from the defendant, although he has readily admitted the offense, uh, it sounds like and taken responsibility here today, has not tried to blame others or anything like that."

{¶11} After consideration, the trial court (1) sentenced appellant to serve life in prison without the possibility of parole, (2) dismissed count two and the gun specifications without prejudice, and (3) ordered appellant to pay all costs. This appeal followed.

I.

{¶12} In his first assignment of error, appellant asserts that he did not enter a knowing, intelligent and voluntary guilty plea because he had "to speculate as to whether he had the intent to commit the offense." In particular, appellant refers to his response to the trial court's questioning about his intent to kill the victim "I suppose so, yea," at sentencing as speculative.

{¶13} "Because a no-contest or guilty plea involves a waiver of constitutional rights, a defendant's decision to enter a plea must

be knowing, intelligent, and voluntary." Crim.R. 11, *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 10, citing *Parke v. Raley*, 506 U.S. 20, 28-29, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992). Thus, if the defendant did not enter the plea knowingly, intelligently, and voluntarily, enforcement of that plea is unconstitutional. *Id.*

{¶14} Appellate courts apply a de novo standard of review when evaluating a plea's compliance with Crim.R. 11(C). *State v. Nero*, 56 Ohio St.3d 106, 108-109, 564 N.E.2d 474 (1990). Moreover, evidence of a written waiver form signed by the accused constitutes strong proof of a valid waiver. *State v. Clark*, 38 Ohio St.3d 252, 261, 527 N.E.2d 844 (1988). In the present case, appellant does not challenge the trial court's compliance with Crim.R. 11, but rather argues that due to his "speculative" response, he did not enter a knowing, intelligent, or voluntary guilty plea.

{¶15} In the case sub judice, appellant's signed written plea of guilty form is included in the record. Also, during the plea colloquy the trial court reviewed the elements of the charge, the possible sentence and asked appellant if he understood that his guilty plea waived his right to a jury trial, right not to testify against himself, right to confront witnesses, right to compulsory process, and right to require the state to prove his guilt beyond a

reasonable doubt.  Appellant responded that he did understand.  The court further reviewed appellant's mental health and medication history and asked appellant if he entered his plea intelligently, knowingly, and voluntarily.  Appellant characterized the offense as "just basically like what it said.  I, you know, I shot Dwayne Qualls.  Took his life on that day."  The court then asked, "So, shot him with the intent of killing him?"  Appellant replied, "I suppose so, yea."  After that, appellant withdrew his not guilty plea and entered a plea of guilty to the aggravated murder charge.

{¶16} Appellant asserts that he did not enter a knowing, voluntary, or intelligent plea because his response to the trial court's inquiry indicated speculation regarding intent to commit the offense.  Appellant argues that, when asked if he intended to kill the victim, he responded, "I suppose so."  The record, however, indicates that appellant replied, "I suppose so, yea."  The latter part of the phrase shows an affirmative response.  Turning to the words, "I suppose so," the Supreme Court of Ohio has held that "[t]o determine the common, everyday meaning of a word, we have consistently used dictionary definitions."  *State v. Wells*, 91 Ohio St.3d 32, 34, 740 N.E.2d 1097 (2001); *Campus Bus Serv. v. Zaino*, 98 Ohio St.3d 463, 2003-Ohio-1915, 786 N.E.2d 889, ¶ 21.  Thus, a court may take judicial notice of definitions in standard

dictionaries.  *Andrews v. Tax Comm. of Ohio,* 135 Ohio St. 374, 21 N.E.2d 106 (1939).  In addition to dictionary definitions, courts may also look to the "meaning that the word [] ha[s] acquired when * * * used in case law."  *Rancho Cincinnati Rivers, L.L.C. v. Warren Cty. Bd. of Revision,* 165 Ohio St.3d 227, 2021-Ohio-2798, 177 N.E.3d 256, ¶ 21.

{¶17} The Online Oxford English Dictionary defines "suppose," inter alia, as "to hold as a belief or opinion; to believe in the truth of; to think, be of the opinion" and "[t]o assume (without reference to truth or falsehood) as a basis of argument, or for the purpose of tracing consequences; to frame as a hypothesis; to put as an imaginary case; to posit," and "[t]o believe as a certainty, know, understand."  Oxford English Dictionary, s.v. "suppose, v.", September 2023. <https://doi.org/10.1093/OED/9741133745> (accessed December 11, 2023). The online edition of Merriam-Webster's Dictionary defines "suppose" as a transitive verb meaning "a. to lay down tentatively as a hypothesis, assumption, or proposal, b. to hold as an opinion, or to think probable or in keeping with the facts."  Merriam-Webster.com. Dictionary, "suppose, v." <https://www.merriam-webster.com/dictionary/suppose> (accessed December 11, 2023).  Webster's New World Dictionary defines "suppose" as "to suppose, assume * * * to assume to be true, as for

the sake of argument, or to illustrate a proof." *Third College Edition Webster's New World Dictionary of American English* 1346 (1991). Finally, the Shorter Oxford English Dictionary on Historical Principles defines "suppose" as "[h]old as an opinion; believe as a fact; think as if certain that." And the same dictionary defines "suppose so" as "expressing hesitant agreement." *Shorter Oxford English Dictionary on Historical Principles* 316-317 (Sixth Ed.2007). Thus, the dictionary definitions collectively lead us to conclude that appellant's response "I suppose so" indicates a belief or opinion held as fact.

{¶18} In *State v. Williams,* 6 Ohio St.3d 281, 452 N.E.2d 1323 (1983), the Supreme Court of Ohio considered the meaning of the phrase "I suppose so," uttered during voir dire. The court observed that the expression is a colloquialism. *Id.* at 288. The court pointed out: "[D]epending on the facial movements or physical gesture that accompany [it], [the colloquialism] can be as unequivocal as [a] 'yes' answer." *Id.* Moreover, the court noted that because a trial court is best positioned to observe a juror's demeanor during *voir dire*, the court refrained from challenging the "propriety of its determination." *Id.* *See also State v. Anthony*, 2019-Ohio-5410, 151 N.E.3d 13, ¶ 15 (11th Dist.)(trial court best position to determine defendant's genuineness); *State v. Moore,* 6th

Dist. Lucas No. L-17-1291, 2019-Ohio-1032, ¶ 35 (trial court best position to judge credibility). We believe that appellant's statement acknowledged his commission of the offense and his desire to enter a guilty plea.

{¶19} Consequently, after our review we conclude that appellant entered a knowing, intelligent, and voluntary guilty plea. Accordingly, we overrule appellant's first assignment of error.

II.

{¶20} In his second assignment of error, appellant asserts that the trial court's sentence is contrary to law because the court considered appellant's silence at sentencing as a lack of remorse. This argument involves the trial court's consideration of the sentencing factor in R.C. 2929.12(D)(5). *State v. Brunson*, 171 Ohio St.3d 384, 2022-Ohio-4299, 218 N.E.3d 765.

{¶21} As *Brunson* points out, an appellate court's review of the R.C. 2929.11 and 2929.12 sentencing factors is limited under R.C. 2953.08(G)(2)(b). *Id.* R.C. 2953.08(G) provides, in relevant part, that after an appellate court reviews the record, it "may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand * * * if it clearly and convincingly finds * * * [t]hat the sentence is * * * contrary

to law." R.C. 2953.08(G)(2)(b). Moreover, whether a trial court improperly considered an offender's silence at sentencing as demonstrating a lack of remorse falls within the parameters of whether a sentence is "otherwise contrary to law," and is therefore proper for appellate review under R.C. 2953.08(G)(2)(b). *See Brunson* at ¶ 70.

**{¶22}** In the case sub judice, in light of no objection to the trial court's alleged inference of lack of remorse from appellant's decision not to speak at sentencing, this court is limited to a plain error review. *Brunson* at ¶ 65-67 (applying plain-error review when defendant did not object to "the trial court's consideration of his decision to remain silent and waive allocution in finding that he lacked remorse").

**{¶23}** For the plain error doctrine to apply, the party claiming error must establish (1) that "'an error, i.e., a deviation from a legal rule'" occurred, (2) that the error was "'an "obvious" defect in the trial proceedings,'" and (3) that this obvious error affected substantial rights, i.e., the error "'must have affected the outcome of the trial.'" *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002); *accord State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 62;

MEIGS, 23CA4

*State v. Young,* 2018-Ohio-4990, 125 N.E.3d 177, ¶ 4 (4th Dist.).

For an error to be "plain" or "obvious," the error must be plain

"under current law" "at the time of appellate consideration.*"*

*Johnson v. United* States, 520 U.S. 461, 467, 468, 117 S.Ct. 1544,

137 L.Ed.2d 718 (1997); accord *Barnes*, 94 Ohio St.3d at 27, 759

N.E.2d 1240; *State v. G.C.*, 10th Dist. Franklin No. 15AP-536, 2016-

Ohio-717, ¶ 14. "We take '[n]otice of plain error * * * with the

utmost caution, under exceptional circumstances and only to prevent

a manifest miscarriage of justice.'" *Obermiller* at ¶ 62, quoting

State v. Long, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978).

"Reversal is warranted only if the outcome of the [proceeding]

clearly would have been different absent the error." *State v.*

*Hill*, 92 Ohio St.3d 191, 203, 749 N.E.2d 274 (2001).

{¶24} Crim.R. 32(A) requires trial courts to allow defendants

to speak during sentencing hearings. "'The purpose of allocution

is to permit the defendant to speak on his own behalf or present

any information in mitigation of punishment.'" (Citations omitted.)

*State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d

1121, ¶ 85. The Crim.R. 32 inquiry "is much more than an empty

ritual: it represents a defendant's last opportunity to plead his

case or express remorse." *State v. Green*, 90 Ohio St.3d 352, 359-

360, 738 N.E.2d 1208 (2000). However, the opportunity for a

defendant to speak during a sentencing hearing does not require that a defendant speak. "'Any effort by the State to compel [the defendant] to testify against his will at the sentencing hearing clearly would contravene the Fifth Amendment.'" *Mitchell v. United States*, 526 U.S. 314, 326, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999), quoting *Estelle v. Smith,* 451 U.S. 454, 463, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). Thus, a sentencing court cannot use silence at sentencing against a defendant because the right against self-incrimination follows the defendant to sentencing. *Mitchell* at 321. *Mitchell* also held that it is inappropriate to infer *facts of the crime* from a defendant's silence at sentencing. However, *Mitchell* "did not address whether a defendant's 'silence bears upon the determination of a lack of remorse, or upon the acceptance of responsibility for the purposes of the downward adjustment provided [in the federal sentencing guidelines].'" *Brunson* at ¶ 76, quoting *Mitchell* at 330.

**{¶25}** Although the United States Supreme Court did not address whether lack of remorse could be inferred from a defendant's silence at sentencing, the Supreme Court of Ohio addressed the issue in *Brunson.* The court cited *White v. Woodall*, 572 U.S. 415, 134 S.Ct. 1697, 188 L.Ed.2d 698 (2014), to point out that *Mitchell* may permit some negative inferences regarding a defendant's silence

MEIGS, 23CA4

at sentencing.  *Brunson* at ¶ 77, citing *Woodall* at 422, 134 S.Ct.

1697.  *Brunson* held that "a trial court errs in its evaluation of a

defendant's lack of remorse when it considers that defendant's

decision to waive allocution and remain silent at sentencing *if the*

*defendant pleaded not guilty and exercised his or her right to a*

*jury trial."*  (Emphasis added.)  *Brunson* at ¶ 4.  The court stated

that the "focus in determining whether a negative inference from a

defendant's silence may be considered as a demonstration of that

defendant's lack of remorse is on whether the inference affects the

factual determinations in the case."  *Id.* at ¶ 78.  The court wrote

at ¶ 81:

> Because 'remorse' is a loaded term and showing remorse
> requires a person to acknowledge that he or she committed
> an offense, a finding of a lack of remorse necessarily goes
> 'to *factual determinations* respecting the circumstances
> and details of the crime' (emphasis sic), *Mitchell*, 526
> U.S. at 328, 119 S.Ct. 1307, 143 L.Ed.2d 424, because it
> implicates the defendant's role in the crime.  For a
> criminal defendant who pleaded not guilty and took the case
> to trial, thus maintaining his or her innocence, a finding
> of a lack of remorse based on the defendant's silence is
> to use that silence to infer the defendant's involvement
> in the crime.  If the trial court is permitted to use the
> defendant's silence to infer his or her involvement in the
> crime, the defendant 'might reasonably feel compelled to
> trade the certainty of incrimination by silence for the
> possibility of incrimination by statement.'  *State v.*
> *Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2d 335,
> ¶ 40 (O'Connor, J., concurring).  Such an inference would
> violate the Fifth Amendment.  *See Mitchell* at 326-327, 119
> S.Ct. 1307 (any effort by the state to compel a defendant
> to testify at sentencing would clearly contravene the Fifth
> Amendment).  And such an inference would go against the

essential purpose of the right to remain silent – 'to protect a defendant from being the unwilling instrument of his or her own condemnation,' *id*. at 329, 119 S.Ct. 1307.

**{¶26}** Other Ohio courts have held that a defendant's silence at sentencing may not be used against the defendant in fashioning a sentence. *State v. Betts*, 8th Dist. Cuyahoga No. 88607, 2007-Ohio-5533, ¶ 29. However, lack of remorse is a sentencing factor under R.C. 2929.12(D)(5). Therefore, even when a defendant does not speak at sentencing, "the court's statement that the defendant demonstrated a lack of remorse and an unwillingness to take responsibility, does not demonstrate that a court's sentencing decision is based upon the silence but shows only that the court was considering the statutory sentencing factors." *State v. Clunen,* 7th Dist. Columbiana No. 12 CO 30, 2013-Ohio-5525, ¶ 21; *State v. Moore*, 11th Dist. Geauga No. 2011-G-3027, 2012-Ohio-3885, ¶ 47; *Hodges*, *supra,* at ¶ 11.

**{¶27}** The Eleventh District recently considered facts similar to the facts present in the case at bar. After the defendant pleaded guilty, the appellate court pointed out that the *Brunson* holding "that a court may not infer a lack of remorse from a defendant's silence at sentencing [is] limited to where a defendant has pleaded not guilty and gone to trial, which is not the case here." *State v. Gurto*, 11th Dist. Ashtabula No. 2022-A-0045, 2023-

Ohio-2351, ¶ 19. Thus, the court held that because the defendant pleaded guilty, "we cannot discern how an inference of lack of remorse pertains to facts of the case, as Gurto already acknowledges wrongdoing through his guilty plea." *Id.* at ¶ 20.

{¶28} In *State v. Lowery,* 2d Dist. Clark No. 2023-CA-4, 2023-Ohio-4444, the Second District considered a case similar to the instant case. In *Lowery,* the defendant pleaded guilty, but later alleged that the prosecutor's argument that Lowery's failure to identify his codefendant constitutes an aggravating sentencing factor that violated his Fifth Amendment rights. In rejecting this contention, the Second District held at ¶ 19:

> We note too that Ohio case law preceding *Brunson* permitted a trial court to infer a lack of remorse from silence following a guilty plea without running afoul of the Fifth Amendment. *See State v. Duhl*, 2d Dist. Champaign No. 2016-CA-30, 2017-Ohio-5492, ¶ 31 ("Duhl pled guilty to the crimes. Furthermore, * * * the court here was not trying to draw adverse inferences about the circumstances of the crime in order to punish Duhl more severely. Instead, the transcript clearly indicates that the trial court's focus was on whether Duhl was remorseful for the crimes he had committed."); *State v. Taft*, 6th Dist. Huron No. H-18-003, 2019-Ohio-1565, ¶ 33, quoting Duhl at ¶ 31 ("[A] trial court does not violate a defendant's right against self-incrimination when it notes that the defendant's silence shows a lack of remorse or an unwillingness to take responsibility for the crime because it is not using the silence 'to draw adverse inferences about the circumstances of the crime in order to punish [the defendant] more severely.' "). In light of the foregoing authority, we see no obvious Fifth Amendment violation arising from the trial court's inference of a lack of remorse based on Lowery's refusal to identify his accomplice at sentencing.

*Id.* at ¶ 19.

**{¶29}** In the case sub judice, after our review we do not believe that the trial court penalized appellant for his silence at sentencing. After appellant's guilty plea, the trial court analyzed the sentencing factors and stated, "Uh, the Court has not had the opportunity to look at whether or not there's remorse because there's no * * * no statement from the defendant, although he has readily admitted the offense, uh, it sounds like and taken responsibility here today, has not tried to blame others or anything like that." We believe that the trial court's comments represent the court's review of the R.C. 2929.12 factors, rather than drawing any adverse inference and penalizing appellant for his silence. Moreover, as in *Gurto* and *Lower,* we conclude that when appellant pleaded guilty, he already had acknowledged wrongdoing. Therefore, we find no error, plain or otherwise, and overrule appellant's second assignment of error.

**{¶30}** Accordingly, for all of the foregoing reasons, we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

[Cite as *State v. Leib*, 2024-Ohio-1081.]

JUDGMENT ENTRY


It is ordered that the judgment be affirmed and appellee recover from appellant the costs herein taxed.


The Court finds there were reasonable grounds for this appeal.


It is ordered that a special mandate issue out of this Court directing the Meigs County Common Pleas Court to carry this judgment into execution.


A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court


BY:_____
                                    Peter B. Abele, Judge




NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.